KAPLAN FOX & KILSHEIMER LLP
Laurence D. King (SBN 206423)
*lking@kaplanfox.com*
Mario M. Choi (SBN 243409)
*mchoi@kaplanfox.com*
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 772-4700
Facsimile:  (415) 772-4709

KAPLAN FOX & KILSHEIMER LLP
Justin B. Farar (SBN 211556)
*jfarar@kaplanfox.com*
11111 Santa Monica Blvd., Suite 620
Los Angeles, CA  90025
Telephone: (310) 575-8670
Facsimile:  (310) 575-8697

KAPLAN FOX & KILSHEIMER LLP
Jeffrey P. Campisi (to be admitted *pro hac vice*)
*jcampisi@kaplanfox.com*
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC KERBS, on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br><br>     v.<br><br>OSI SYSTEMS, INC.; DEEPAK CHOPRA; AJAY MEHRA; and ALAN EDRICK,<br><br>              Defendants. | Case No.  17-cv-8991<br><br>__CLASS ACTION__<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>__JURY TRIAL DEMANDED__ |

Plaintiff Eric Krebs ("Plaintiff"), by his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon the investigation of Plaintiff's counsel, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge. The investigation of counsel included, among other things, a review of OSI Systems, Inc. ("OSI" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, media, news and analyst reports about the Company, conference calls with Company executives and investors, and other publicly available data, including, but not limited to, publicly available trading data relating to the price and trading volume of OSI common stock.

## I.    INTRODUCTION

1.    This action is a securities fraud action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC brought by Plaintiff on behalf of all persons and entities who purchased the common stock of OSI between August 21, 2013 and December 6, 2017, inclusive (the "Class Period").

2.    OSI purportedly designs and manufactures specialized electronic systems and components. The Company claims that it sells its products and provides related services in diversified markets, including homeland security, healthcare, defense, and aerospace.

3.    On December 6, 2017, Muddy Waters Research published a report on OSI entitled "OSIS: Rotten to the Core." (http://www.muddywatersresearch.com/research/).

4.    Muddy Waters alleges that there was corruption in the 2013 award of OSI's Albania concession. Muddy Waters claims that while the concession "has an estimated top line lifetime value of $150 million to $250 million," OSI "likely bribed somebody by giving half of it away for $4.50" since "[t]here was an unannounced transfer of 49% of OSIS's project company, S2 Albania SHPK, to a

holding company owned by an Albanian doctor, for consideration of less than $5.00." Muddy Waters also alleges that its "investigators' interviews with former employees yielded numerous anecdotes indicating OSIS is rotten to the core," including "knowledge of improper sales, cash payments to government officials, fraud in a significant contract, and that OSIS had narrowly avoided being debarred from doing business with the U.S. government."

5. On this news, the Company's stock price declined $24.55 per share, or 29.2%, to close at $59.52 per share on December 6, 2017, on unusually heavy trading volume.

6. Throughout the Class Period, Defendants (as defined below) made materially false or misleading statements, and failed to disclose the following material facts about the Company's business, operations, and prospects: (1) that OSI obtained a major turnkey contract in Albania through corruption or bribery; (2) that OSI transferred 49% of its project company in Albania, S2 Albania SHPK, for consideration of less than $5.00; (3) that OSI's Mexico turnkey contract was materially overpriced and was based on false representations about the capabilities of OSI's equipment, causing a material risk that the Defendants' efforts to renew the contract in 2018 would be negatively affected; (4) that the Company's Rapiscan business experienced material accounting problems; (5) that the Company's financial statements were not prepared in accordance with generally accepted accounting principles (GAAP); and (6) that these practices caused the Company to be vulnerable to potential civil and criminal liability, and adverse regulatory action.

7. As a result of Defendants' wrongful conduct, and the decline in the price of the Company's common stock when the Defendants' wrongful conduct began to be revealed, Plaintiff and other Class members have suffered damages.

2

## II.    JURISDICTION AND VENUE

8.    The claims asserted arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Jurisdiction is conferred by Section 27 of the Exchange Act.

9.    Venue is proper in this District under Section 27 of the Exchange Act. Substantial acts in furtherance of the wrongs alleged or their effects have occurred within this District and the Company maintains its headquarters in this District.

10.    In connection with the facts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    PARTIES

11.    Plaintiff purchased OSI common stock as detailed in the certification attached hereto and was damaged thereby.

12.    Defendant OSI is incorporated in Delaware and its principal executive offices are at 12525 Chadron Avenue, Hawthorne, California 90250. OSI's common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "OSIS."

13.    Defendant Deepak Chopra ("Chopra") was the Chief Executive Officer ("CEO") of OSI at all relevant times.

14.    Defendant Alan Edrick ("Edrick") was the Chief Financial Officer ("CFO") of OSI at all relevant times.

15.    Defendant Ajay Mehra ("Mehra") is Executive Vice President and President of OSI Solutions Business and a Director of the Company.

16.    Defendants OSI, Chopra, Edrick and Mehra are collectively referred to as "Defendants".

17.    Defendants Chopra, Edrick and Mehra are referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions

with the Company, possessed the power and authority to control the contents of OSI's press releases, SEC filings and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Defendants Chopra and Edrick were provided with copies of the Company's press releases and SEC filings alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading.

## IV.   CLASS ACTION ALLEGATIONS

18.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased the publicly traded common stock of OSI between August 21, 2013 and December 6, 2017, inclusive (the "Class").

19.   The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout the United States. As of September 5, 2017, OSI had over 18 million shares of common stock outstanding.

20.   Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have sustained damages because of Defendants' unlawful activities alleged herein. Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously. The interests of the Class will be fairly and adequately

protected by Plaintiff.  Plaintiff has no interests which are contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

## V.    DEFENDANTS' FALSE AND MISLEADING STATEMENTS

21.    On August 21, 2013, Defendants caused the Company to issue a press release titled "OSI Systems Receives Fifteen-Year Agreement to Provide Turnkey Screening Services in Albania" that stated, in part, the following:

> OSI Systems, Inc. (NASDAQ: OSIS), a vertically-integrated provider of specialized electronics and services, today announced that the Government of Albania has awarded its Security Division, Rapiscan Systems, a fifteen-year contract to provide turnkey cargo and vehicle security screening services at various sites throughout the country. OSI Systems' CEO, Deepak Chopra, stated, "This significant award from Albania to provide turnkey screening services builds upon similar long-term agreements awarded by the Puerto Rico ports authority and Mexico's tax and customs authority. Our strategy of expanding our security offerings beyond the manufacture and sale of screening and detection equipment by providing comprehensive turnkey screening services continues to be well received in the marketplace. Our experience and capability to develop and integrate leading edge inspection technologies coupled with our depth of operational expertise is unmatched in the industry and we believe makes us uniquely qualified to secure and manage such complex programs."
>
> Under the program, Rapiscan Systems intends to provide a comprehensive X-ray screening program, which will incorporate technology, staffing, systems integration, and maintenance support at sites throughout Albania. These operational capabilities are intended to enhance the Albanian government's capability to interdict contraband

and undeclared materials. The Company currently anticipates that total gross revenues may range from $150 million - $250 million over the term of the agreement. Actual revenues could differ significantly from the range provided as the generation of revenue is based upon the volume of cargo and other factors.

Ajay Mehra, President of Rapiscan Systems, stated, "The Albanian government's initiative to secure its ports and land crossings represents another significant step in the security inspection arena. We are proud to have been selected to execute this critical program. Our selection reinforces the attractiveness and compelling value of our turnkey service model."

22.    On August 25, 2014 Defendants caused the Company to issue a press release titled "OSI Systems Reports Fourth Quarter and Fiscal Year 2014 Financial Results" that stated, in part, the following:

OSI Systems, Inc. (NASDAQ: OSIS) today announced financial results for its fourth quarter and fiscal year ended June 30, 2014. Deepak Chopra, OSI Systems President and CEO, stated, "We are pleased to report record results for our fourth quarter. Led by our Security Division, we reported a 14% increase in sales with strong bookings highlighted by a significant Foreign Military Sales (FMS) contract from the U.S. Department of Defense. Our substantial backlog and pipeline of opportunities place us in a solid position heading into our new fiscal year."

The Company reported revenues of $260 million for the fourth quarter of fiscal 2014, an increase of 14% from the $228 million reported for the fourth quarter of fiscal 2013. Net income for the fourth quarter of

fiscal 2014 was $22.1 million, or $1.07 per diluted share, compared to net income of $11.8 million, or $0.58 per diluted share, for the fourth quarter of fiscal 2013. . . .

For the fiscal year ended June 30, 2014, the Company reported revenues of $907 million, a 13% increase from the $802 million reported for fiscal 2013. Net income for fiscal 2014 was $47.9 million, or $2.33 per diluted share, compared to net income of $44.1 million, or $2.15 per diluted share, in fiscal 2013. . . .

23.    Also on August 24, 2014 the Company held a conference call with investors during which Defendant Chopra stated the following:

Last year, we announced a 15-year contract that we received from the government of Albania to provide turnkey cargo and vehicle screening services at various sites throughout the country of Albania. Unfortunately, we recently learned that the customer, the Albanian newly elected government, has halted further progress on the contract and put into doubt the continuation of the program. The program had been proceeding smoothly and ahead of schedule. We intend to strongly enforce our contractual rights and hope to reach an amicable outcome…You can understand that, under the circumstances, we cannot comment further at this time.

24.    On August 27, 2014, Defendants caused the Company to file its annual report on Form 10-K for the year ended June 30, 2014 ("2014 10-K"). The 10-K was signed by Defendants Chopra, Edrick and Mehra, and repeated the Company's representations about its financial results contained in the press release issued on August 14, 2014.

25.    The 2014 10-K included certifications signed by Defendants Chopra and Edrick under Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 that represented the following:

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rule 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial

statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions): (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

26.     On August 20, 2015 Defendants caused the Company to issue a press release titled "OSI Systems Reports Fourth Quarter and Fiscal Year 2015 Financial Results" that stated, in part, the following:

OSI Systems, Inc. (NASDAQ: OSIS) today announced financial results for its fourth quarter and fiscal year ended June 30, 2015. Deepak Chopra, OSI Systems' President and CEO, stated, "We are pleased to report our fourth quarter and full year operating results. We achieved record sales and earnings during the quarter and fiscal 2015. With a robust pipeline of opportunities across each of our divisions coupled with significant, recently implemented operational improvement initiatives, we are optimistic for the future."

The Company reported revenues of $267 million for the fourth quarter of fiscal 2015, an increase of 2% from the $260 million reported for the fourth quarter of fiscal 2014. Net income for the fourth quarter of fiscal 2015 was $22.4 million, or $1.09 per diluted share, compared to net income of $22.1 million, or $1.07 per diluted share, for the fourth quarter of fiscal 2014. . . .

For the fiscal year ended June 30, 2015, the Company reported revenues of $958 million, a 6% increase from the $907 million reported for fiscal 2014. Net income for fiscal 2015 was $65.2 million, or $3.17 per diluted share, compared to net income of $47.9 million, or $2.33 per diluted share, in fiscal 2014. . . .

27.    On August 24, 2015, the Company filed its annual report on Form 10-K for the year ended June 30, 2015 ("2015 10-K"). The 2015 10-K was signed by Defendants Chopra, Edrick and Mehra, and repeated the Company's statements about its financial results contained in the press release issued on August 20, 2015.

28.    The 2015 10-K included certifications signed by Defendants Chopra and Edrick under Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 that repeated the representations alleged in Paragraph 25.

29.    On August 16, 2016 Defendants caused the Company to issue a press release titled "OSI Systems Reports Fourth Quarter and Fiscal Year 2016 Financial Results" that stated, in part, the following:

> OSI Systems, Inc. (NASDAQ: OSIS) today announced financial results for its fourth quarter and fiscal year ended June 30, 2016. Deepak Chopra, OSI Systems' President and CEO, stated, "While our fourth quarter and full year operating results, in part, reflect the challenges of fiscal 2016, we are optimistic about our prospects for fiscal 2017. We are confident that our strengthened leadership team, enhanced product portfolios and robust pipeline of opportunities across each of our divisions position us well for top line growth and expanded profitability in fiscal 2017."

> The Company reported revenues of $221 million for the fourth quarter of fiscal 2016, a decrease of 17% from the $267 million reported for the fourth quarter of fiscal 2015. Net income for the fourth quarter of fiscal 2016 was $5.9 million, or $0.30 per diluted share, compared to net income of $22.4 million, or $1.09 per diluted share, for the fourth quarter of fiscal 2015. . . .

> For the fiscal year ended June 30, 2016, the Company reported revenues of $830 million, a 13% decrease from the $958 million reported for fiscal 2015. Net income for fiscal 2016 was $26.2 million, or $1.30 per diluted share, compared to net income of $65.2 million, or $3.17 per diluted share, in fiscal 2015. Excluding the impact of impairment, restructuring and other charges, net income for fiscal 2016 would have been $42.4 million, or $2.11 per diluted share, compared to net income of $72.4 million, or $3.53 per diluted share, for fiscal

2015.

30.    On August 19, 2016, Defendants caused the Company to file its annual report on Form 10-K for the year ended June 30, 2016 ("2016 10-K"). The 2016 10-K was signed by Defendants Chopra, Edrick and Mehra, and repeated Company's representations about its financial results contained in the press release issued on August 16, 2016.

31.    The 2016 10-K included certifications signed by Defendants Chopra and Edrick under Section 302 and 906 of the Sarbanes-Oxley Act of 2002 that repeated the representations alleged in Paragraph 25.

32.    On February 17, 2017, the Company disclosed an offering of $225 million in convertible senior notes due 2022.  In the Purchase Agreement with the underwriters, OSIS represented that except as disclosed in the General Disclosure Package and the Final Offering Memorandum, it owns all of the shares of each of its subsidiaries, including S2 Albania.

33.    On August 24, 2017 Defendants caused OSI to issue a press release titled "OSI Systems Reports Fourth Quarter and Fiscal Year 2017 Financial Results" that stated, in part, the following:

> OSI Systems, Inc. (the "Company" or "OSI Systems") (NASDAQ:
> OSIS) today announced financial results for the quarter and fiscal year
> ended June 30, 2017. "We are pleased to announce outstanding fiscal
> fourth quarter results. Each of our three operating divisions contributed
> to the successful conclusion of a strong fiscal year. Performance at the
> Security division, in particular, drove top-line growth and margin
> expansion," said Deepak Chopra, OSI Systems' Chairman and Chief
> Executive Officer.
>
> The Company reported revenues of $252 million for the fourth quarter
> of fiscal 2017, an increase of 14% from the $221 million reported for

the fourth quarter of fiscal 2016. Net income for the fourth quarter of fiscal 2017 was $1.5 million, or $0.08 per diluted share, compared to net income of $5.9 million, or $0.30 per diluted share, for the fourth quarter of fiscal 2016.

For the fiscal year ended June 30, 2017, the Company reported revenues of $961 million, an increase of 16% as compared to the same period a year ago. Net income for fiscal 2017 was $21.1 million, or $1.07 per diluted share, compared to net income of $26.2 million, or $1.30 per diluted share, in the same period a year ago.

34.    On September 9, 2017, Defendants caused the Company to file its annual report on Form 10-K for the year ended June 30, 2017 ("2017 10-K"). The 10-K was signed by Defendants Chopra, Edrick and Mehra, and repeated the Company's representations about its financial results contained in the press release issued on August 24, 2017.

35.    The 2017 10-K included certifications signed by Defendants Chopra and Edrick under Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 that repeated the representations alleged in Paragraph 25.

36.    Defendants' representations during the Class Period set forth above were materially false or misleading statements, and failed to disclose material facts about the Company's business, operations, and prospects, namely: (1) that OSI obtained a major turnkey contract in Albania through corruption or bribery; (2) that OSI transferred 49% of its project company in Albania, S2 Albania SHPK, for consideration of less than $5.00; (3) that OSI's Mexico turnkey contract was materially overpriced and was based on false representations about the capabilities of OSI's equipment, causing a material risk that the Defendants' efforts to renew the contract in 2018 would be negatively affected; (4) that the Company's Rapiscan business experienced material accounting problems; (5) that the Company's

financial statements were not prepared in accordance with GAAP; and (6) that these practices caused the Company to be vulnerable to potential civil and criminal liability, and adverse regulatory action.

## VI.    LOSS CAUSATION/ECONOMIC LOSS

37.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated OSI's common share price and operated as a fraud or deceit on Class Period purchasers of OSI common stock by misrepresenting the Company's operating condition and future business prospects.  Defendants achieved this by making positive statements about OSI's business and financial results while they knew, or disregarded with deliberate recklessness, the adverse facts alleged above.

38.    Later, however, when Defendants' prior misrepresentations were disclosed and became apparent to the market, the price of OSI's common stock fell precipitously as the prior artificial inflation came out of OSI's share price.

39.    As a result of their purchases of OSI common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

40.    As a direct result of the public revelations regarding the truth about the condition of OSI's business and the negative adverse factors that had been impacting OSI's business during the Class Period, the price of OSI's common stock materially declined.  This drop removed the inflation from OSI's share price, causing real economic loss to investors who purchased OSI common stock during the Class Period.

41.    The decline in OSI's share price at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of OSI's share price decline negates any inference that the loss suffered by Plaintiff and other Class members

1   was caused by changed market conditions, macroeconomic or industry factors, or

2   Company-specific facts unrelated to the Defendants' alleged fraudulent conduct.

## VII.   FRAUD-ON-THE-MARKET DOCTRINE

4       42.    At all relevant times, the market for OSI's common stock was an

5   efficient market for the following reasons, among others:

6           (a)    The Company's common stock met the requirements for public

7   listing and were listed and actively traded on the NASDAQ, a highly efficient

8   market;

9           (b)    As a regulated issuer, the Company filed periodic public reports

10  with the SEC; and

11          (c)    The Company regularly issued press releases which were carried

12  by national news wires.  Each of these releases was publicly available and entered

13  the public marketplace.

14      43.    As a result, the market for the Company's publicly traded common

15  stock promptly digested current information with respect to OSI from all publicly

16  available sources and reflected such information in the price of the Company's

17  common stock.   Under these circumstances, all purchasers of the Company's

18  publicly traded common stock during the Class Period suffered similar injury

19  through their purchase of the publicly traded common stock of OSI at artificially

20  inflated prices and a presumption of reliance applies.

## VIII.  ADDITIONAL SCIENTER ALLEGATIONS

22      44.    As alleged herein, Defendants acted with scienter in that Defendants

23  knew, or disregarded with deliberate recklessness, that the public documents and

24  statements issued or disseminated in the name of the Company were materially

25  false and misleading; knew that such statements or documents would be issued or

26  disseminated to the investing public; and knowingly and substantially participated

27  or acquiesced in the issuance or dissemination of such statements or documents as

28  primary violations of the federal securities laws. As set forth elsewhere herein in

detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding OSI, their control over, and/or receipt and/or modification of OSI's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning OSI, participated in the fraudulent scheme alleged herein.

45.    Defendants knew or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

46.    Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because the Individual Defendants were the most senior officers of OSI, issued statements and press releases on behalf of OSI and had the opportunity to commit the fraud alleged herein.

47.    Defendants were motivated to conceal the fraud alleged herein in order to raise capital for the Company. On February 14, 2017, OSI announced an offering of $225 million principal amount of Convertible Senior Notes due 2022, with an over-allotment option to investors to purchase up to an additional $33.75 million principal amount of Notes solely to cover over-allotments, if any.

## IX.    NO SAFE HARBOR

48.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent

that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of OSI who knew that those statements were false when made.

## X.   RELIEF REQUESTED

### FIRST CLAIM FOR RELIEF
### For Violation of Section 10(b) of the 1934 Act
### and Rule 10b-5 Against All Defendants

49.   Plaintiff incorporates ¶¶ 1-48 by reference.

50.   During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51.   Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)   Employed devices, schemes and artifices to defraud;

(b)   Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(c)   Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of OSI's publicly traded common stock during the Class Period.

52.   Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for OSI's publicly traded common stock.  Plaintiff and the Class would not have purchased OSI's

1   common stock at the prices they paid, or at all, if they had been aware that the

2   market prices had been artificially and falsely inflated by Defendants' misleading

3   statements.

4   53.   As a direct and proximate result of these Defendants' wrongful

5   conduct, Plaintiff and the other members of the Class suffered damages in

6   connection with their purchases of OSI's common stock during the Class Period.

7   **SECOND CLAIM FOR RELIEF**
    **For Violation of Section 20(a) of the 1934 Act**

8   **Against the Individual Defendants**

9   54.   Plaintiff incorporates ¶¶ 1-48 by reference.

10  55.   The Individual Defendants acted as a controlling person of OSI within

11  the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of

12  their high-level positions, and their ownership and contractual rights, participation

13  in and/or awareness of the Company's operations and/or intimate knowledge of the

14  statements filed by the Company with the SEC and disseminated to the investing

15  public, the Individual Defendants had the power to influence and control and did

16  influence and control, directly or indirectly, the decision-making of the Company,

17  including the content and dissemination of the various statements that Plaintiff

18  contends are false and misleading.  The Individual Defendants were provided with

19  or had unlimited access to copies of the Company's reports, press releases, public

20  filings and other statements alleged by Plaintiff to be misleading prior to and/or

21  shortly after these statements were issued and had the ability to prevent the issuance

22  of the statements or cause the statements to be corrected.

23  56.   In particular, the Individual Defendants had direct and supervisory

24  involvement in the day-to-day operations of the Company and, therefore, are

25  presumed to have had the power to control or influence the particular transactions

26  giving rise to the securities violations as alleged herein, and exercised the same.

27  57.   As set forth above, OSI and the Individual Defendants each violated

28  Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this

18

Complaint.  By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of OSI's and the Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Declaring this action to be a proper class action;

B.    Awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and

C.    Such equitable/injunctive relief as the Court may deem proper.

## XII.    JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 14, 2017          KAPLAN FOX & KILSHEIMER LLP

By:  /s/ *Laurence D. King*
Laurence D. King

Laurence D. King (SBN 206423)
*lking@kaplanfox.com*
Mario M. Choi (SBN 243409)
*mchoi@kaplanfox.com*
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 772-4700
Facsimile:  (415) 772-4709

KAPLAN FOX & KILSHEIMER LLP
Justin B. Farar (SBN 211556)
*jfarar@kaplanfox.com*
11111 Santa Monica Blvd., Suite 620
Los Angeles, CA  90025
Telephone: (310) 575-8670
Facsimile:  (310) 575-8697

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAPLAN FOX & KILSHEIMER LLP
Jeffrey P. Campisi (to be admitted *pro hac vice*)
*jcampisi@kaplanfox.com*
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

*Attorneys for Plaintiff*

# CERTIFICATION

I, Eric Krebs, hereby certify as follows:

1.    I have reviewed a complaint prepared against OSI Systems, Inc. alleging violations of the securities laws and authorize the filing of the complaint.

2.    I did not purchase the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial if necessary.  I fully understand the duties and responsibilities of the Lead Plaintiff under the Private Securities Litigation Reform Act of 1995, specifically concerning my selection and retention of counsel and overseeing and directing the prosecution of the action on behalf of the class.

4.    My transactions in OSI Systems, Inc. common stock during the proposed class period, are set forth below:

| Security | Transaction | Trade Date | Price Per Share |
|----------|-------------|------------|-----------------|
| OSIS | Buy 73 shares | 12/6/17 | $74.5228 |
| OSIS | Buy 100 shares | 10/5/17 | $93.57 |

5.    I have not sought to serve as a representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

6.    I will not accept any payment for serving as a representative party on behalf of a class beyond my pro-rata share of any recovery, except as ordered or approved by the court, including any award to a representative plaintiff of reasonable costs and expense directly related to the representation of the class.

7.    I declare under penalty of perjury that the foregoing is true and correct, executed on this ___13___ day of December, 2017.

_____
ERIC KREBS